MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2022 ME 38
Docket:       Lin-21-306
Argued:       May 9, 2022
Decided:      June 28, 2022

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, and LAWRENCE, JJ.*

29 MCKOWN LLC et al.

v.

TOWN OF BOOTHBAY HARBOR et al.

MEAD, J.

[¶1]  This case concerns a real estate office building constructed by party-in-interest Harbor Crossing, LLC, in Boothbay Harbor.  The project is being challenged by two abutters, 29 McKown LLC and Chandler Wright (collectively 29 McKown).  After the Town's Board of Appeals (BOA) denied 29 McKown's administrative appeal from the Code Enforcement Officer's (CEO's) decision to lift a stop work order he had issued to Harbor Crossing during the building's construction, 29 McKown sought review of the BOA's decision in the Superior Court pursuant to M.R. Civ. P. 80B.  29 McKown now appeals from a judgment of the court (Lincoln County, *Billings, J.*) affirming the

---

*  Although Justice Humphrey participated in the appeal, he retired before this opinion was certified.

BOA's decision. We vacate the judgment and remand for further proceedings before the CEO.

## I. BACKGROUND

[¶2] The factual background is drawn from the undisputed facts and the procedural record. *See LaMarre v. Town of China*, 2021 ME 45, ¶ 1 n.1, 259 A.3d 764. The following timeline traces Harbor Crossing's project:

- **March 2020**: Harbor Crossing purchased the property.

- **March 26, 2020**: Harbor Crossing applied for a building permit to renovate the existing building with a "new roof, exterior doors, siding, trim, new flooring, interior doors, paint, [and a] heat pump" and concurrently applied to the Planning Board for permission to operate a branch real estate office in the renovated building.

- **May 13, 2020**: The Planning Board approved Harbor Crossing's application.

- **June 2, 2020**: The CEO issued building permit #20-37 to Harbor Crossing.

- **June 5, 2020**: Harbor Crossing advised the CEO that it had discovered that the existing building was in "very poor condition" and asked whether a new building permit would be required to demolish and rebuild the building with a two-foot extension of one wall. The CEO responded that a new building permit would be required for that project.

   Harbor Crossing submitted a new application seeking to demolish the existing building; pour a new foundation; expand the main portion of the building from 20'x22' to 22'x22'; change the roof pitch; and change the height of the building to 16'.

- **June 8, 2020**: The CEO issued building permit #20-41 to Harbor Crossing. No notice was published or given to the abutters.

- **September 17, 2020**: After receiving a complaint,[1] the CEO issued a stop work order to Harbor Crossing, citing "a deviation from the building design permitted by this office on June 8, 2020, under building permit 20-41." The order stated that it would remain in effect until Harbor Crossing "provide[d] the [CEO with] a revised plan." By email, the CEO advised Harbor Crossing that the building actually being constructed "may have triggered a reason for you to have to go before the Planning Board for approval."

- **September 25, 2020**: After Harbor Crossing submitted new building plans, the CEO lifted the stop work order; he did not issue a new building permit. The notification lifting the stop work order said only that the CEO had "received the information requested" and that "[t]he information satisfies this office."

- **October 22, 2020**: Contending that Harbor Crossing's new building required Planning Board approval pursuant to the Town's Land Use Ordinance, 29 McKown appealed to the BOA from the CEO's action lifting the stop work order. *See* Boothbay Harbor, Me., Land Use Ordinance § 170-61(A)-(B) (May 8, 2010).

- **November 24, 2020**: Following a hearing on November 19, 2020, the BOA denied the appeal in a written decision that summarized the parties' arguments and the CEO's explanation of his findings. In reaching its decision, the BOA "relied upon the CEO's statements" at the hearing.

[¶3] On December 11, 2020, 29 McKown appealed the BOA's decision to the Superior Court pursuant to M.R. Civ. P. 80B. Its complaint asserted that in lifting the stop work order, the CEO effectively issued a new building permit

---

[1] Although the Superior Court found that 29 McKown complained, Harbor Crossing asserts there is no record evidence of that.

without Planning Board approval as required by the Land Use Ordinance.[2] *See* Boothbay Harbor, Me., Land Use Ordinance §§ 170-11 (May 3, 2013), 170-61 (May 8, 2010). On August 30, 2021, the court affirmed the BOA's decision. Harbor Crossing timely appealed from the Superior Court's judgment. *See* M.R. App. P. 2B(c)(1); M.R. Civ. P. 80B(n).

## II. DISCUSSION

[¶4] "When the Superior Court has acted in its intermediate appellate capacity to adjudicate an appeal from a municipal zoning board decision, we review the operative decision of the municipality directly." *Zappia v. Town of Old Orchard Beach*, 2022 ME 15, ¶ 5, 271 A.3d 753. In identifying the operative decision to be reviewed, if "the ordinance explicitly calls for the [BOA's] review to be appellate, the operative decision is that of the CEO." *Id.*; *see LaMarre*, 2021 ME 45, ¶ 4, 259 A.3d 764 ("[I]f . . . the scope of the Board's review is appellate, we review the CEO's decision directly."); 30-A M.R.S. § 2691(3)(C) (2022) ("If a[n] . . . ordinance establishes an appellate review process for the board [of appeals], the board shall limit its review on appeal to the record established by the board or official whose decision is the subject of the appeal

---

[2] The complaint also requested declaratory judgment relief; that count was dismissed by the court as duplicative.

and to the arguments of the parties" and "may not accept new evidence as part of an appellate review.").

[¶5]  The Boothbay Harbor Ordinance governing the BOA explicitly provides that

> [a]dministrative appeals shall be an appellate hearing.  If new facts or evidence are available, the matter shall be referred back to the Planning Board or Code Enforcement Officer for a new decision based on the additional information.

Boothbay Harbor, Me., Land Use Ordinance § 170-108(D)(2)(a) (May 3, 2008).  The BOA recognized that it had only appellate jurisdiction.  Accordingly, we will review the decision of the CEO and not that of the BOA or the Superior Court.  *See Zappia*, 2022 ME 15, ¶ 5, 271 A.3d 753; *LaMarre*, 2021 ME 45, ¶¶ 4-5, 259 A.3d 764.

[¶6]  In *LaMarre*, we cautioned municipalities about the frequently occurring pitfalls of an ordinance that, like Boothbay Harbor's, provides for appellate review by a board of appeals.  2021 ME 45, ¶¶ 11-15, 259 A.3d 764.  The inherent problems of appellate-only review identified in *LaMarre* are present here, and they lead to the same result.  For that reason, we again "strongly urge municipalities to provide for de novo review of CEO decisions by boards of appeals."  *Id.* ¶ 15.

6

[¶7] First, because there is no evidence in the record that any notice of the June 8, 2020, demolish-and-rebuild permit was published as required by the Ordinance,[3] by the time 29 McKown learned of the extent of the project "the decision [to grant the permit had] already been made by the CEO based on whatever information [Harbor Crossing] submitted." *Id.* ¶ 13. The failure to give the required notice, coupled with the absence of de novo review by the BOA, meant that 29 McKown could not submit opposing evidence it may have wished to present to the Town at any point in Harbor Crossing's construction process, thus "depriv[ing] [29 McKown] of a critical component of administrative due process."[4] *Id.*; *see Zappia*, 2022 ME 15, ¶ 7, 271 A.3d 753

---

[3] Boothbay Harbor, Me., Land Use Ordinance § 170-11(A)(6) (May 5, 2003) ("All applications for building permits must be advertised by the Code Enforcement Officer for seven days in the local newspaper to allow for public comment."). Harbor Crossing argues that 29 McKown had notice of the Planning Board proceeding that resulted in the approval of its building for use as a real estate office, but that process concerned only the building's prospective use, not changes to its design, and it preceded the building permits issued by the CEO.

[4] The BOA found that 29 McKown's appeal from the CEO's decision to lift the stop work order on September 25, 2020, was timely. To the extent that Harbor Crossing contends that 29 McKown's appeal is not properly before us because it was not taken from the CEO's issuance of the June 8, 2020, building permit that was the subject of the stop work order, we have held that a regulatory decision finding that original permitting standards were not violated is itself an enforcement action that is judicially reviewable. *See Fox Islands Wind Neighbors v. Dep't of Env't Prot.*, 2015 ME 53, ¶¶ 5, 17, 19-20, 116 A.3d 940.

In any event, were it necessary for 29 McKown to take a late appeal from the original building permit, the CEO's failure to give notice of the permit as required by the Ordinance would likely call for application of a good cause exception to the Ordinance's deadlines. *See supra* n.3; *Viles v. Town of Embden*, 2006 ME 107, ¶¶ 12-13, 905 A.2d 298 ("The need for a good cause exception primarily stems from the lack of notice of the issuance of the building permit to abutting landowners or other persons who may be aggrieved by its issuance. . . . The good cause exception was designed because the lack of a notice requirement may mean that an abutting landowner does not learn of a permit until the time

(stating that when the BOA is limited to appellate review, it is "preclud[ed] . . . from taking additional evidence or adopting its own findings of fact").

[¶8]  The second problem identified by *LaMarre* is that

> adjudication is not a usual CEO task.  Unsurprisingly, when an objection by an interested person comes to the attention of a CEO during the permitting process, the CEO is unfamiliar with the minimum requirements of due process and the prerequisites for preparing a record and a decision sufficient for meaningful appellate review.

2021 ME 45, ¶ 14, 259 A.3d 764.

[¶9]  As *LaMarre* anticipated, the factual record created by the CEO in this case is sparse.  Both the original renovation permit and the demolish-and-rebuild permit were issued to Harbor Crossing with no remarks by the CEO.  When the CEO issued the stop work order some three months later, he cited "a deviation from the building design permitted by this office on June 8, 2020, under building permit 20-41."  The order made no finding reviewable on appeal identifying the nature of the deviation or what corrections would be necessary, saying only that Harbor Crossing was required to submit "a revised plan" showing the building's specifications.

---

period for appeal has expired."); *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 24, 831 A.2d 422 ("When a town violates its own ordinance as to process and on the merits, equity will infer a good cause exception to an ordinance that requires a party to appeal within thirty days of the issuance of a building permit."); Boothbay Harbor, Me., Land Use Ordinance § 170-109(A)(1) (May 3, 1999) (requiring that decisions of the CEO be appealed "within 30 days of the action complained of").

8

[¶10] Private email correspondence from the CEO to Harbor Crossing was somewhat more detailed in identifying the problem, but neither it nor Harbor Crossing's private response by email was readily available to 29 McKown or any other potential objector. When the CEO lifted the stop work order, his decision officially found only that the information he had received from Harbor Crossing "satisfies this office." Precisely what led to the stop work order and how the "deviation" had been remedied was again left unspecified, and there is no indication that the CEO invited input from 29 McKown or anyone else before lifting the order.

[¶11] The CEO's reviewable record leading to 29 McKown's appeal to the BOA consists of nothing more than the barebones entries noted above. Although the Board's written order denying 29 McKown's appeal provided a summary of the CEO's recitation at the hearing of his factual findings that led to the stop work order being lifted, because the BOA did not have de novo jurisdiction we are limited to reviewing the CEO's findings directly.[5] *LaMarre*, 2021 ME 45, ¶ 4, 259 A.3d 764.

[¶12] For a CEO's decision to be judicially reviewable, the CEO must render a decision "based on substantial evidence in the record" that "contain[s]

---

[5] At oral argument, Harbor Crossing agreed that we cannot review the record before the BOA.

findings of fact sufficient to apprise the reviewing court of the decision's basis." *Id.* ¶ 6. The mere issuance of a building permit—or the lifting of a stop work order concerning that permit based only on unspecified "information [that] satisfies [the CEO's] office"—is, absent findings of fact or conclusions of law, "insufficient to allow for meaningful appellate review." *Id.* ¶ 7 (quotation marks omitted); *see id.* ¶ 9 ("There is no identification of what [the potentially relevant] 'new information' was, or what other material the CEO reviewed in his investigation of the facts. This is not sufficient to provide a record for appellate review.").

[¶13] For the reasons we have discussed, we conclude that 29 McKown was deprived of administrative due process and that the CEO did not issue a judicially reviewable decision in lifting the stop work order. Accordingly, we reach the same result as we did in *LaMarre* and

> remand for the CEO to issue a reviewable decision. The evidence upon which the CEO makes his decision must be identified and contained in the record. [The parties] must be permitted to submit their evidence and rebut each other's evidence, no substantive ex parte communications with the CEO should take place, and the CEO's decision must include findings of fact and conclusions of law sufficient to understand the basis for that decision.

*Id.* ¶ 15 (citations omitted).

The entry is:

> Judgment vacated. Remanded to the Superior Court with instructions to remand the matter to the Board of Appeals with instructions to remand to the Code Enforcement Officer for proceedings consistent with this opinion.

_____

Kristin M. Collins, Esq. (orally), and Stephen E.F. Langsdorf, Esq., Preti Flaherty Beliveau & Pachios LLP, Augusta, for appellants 29 McKown LLC and Chandler Wright

Scott D. Anderson, Esq. (orally), Verrill Dana, LLP, Portland, for appellee Harbor Crossing, LLC

John A. Cunningham, Esq., Eaton Peabody, Brunswick, for appellee Town of Boothbay Harbor

Lincoln County Superior Court docket number AP-2020-06
FOR CLERK REFERENCE ONLY